UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ARMANDO CAUICH CASTILLO,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION,<br><br>Defendant. | Case No. 23-cv-03110-RS<br><br>**ORDER DENYING MOTION FOR ATTORNEY FEES** |

## I. INTRODUCTION

Plaintiff Jose Armando Cauich Castillo filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, to compel defendant U.S. Customs and Border Protection ("CBP") to disclose "[a]ny and all agency records (including but not limited to documents, video or audio recordings, and requests for medical assistance) pertaining to Jose Armando Cauich Castillo in March 2022 and April 2022." CBP ultimately produced six pages of documents, and the parties stipulated to dismiss the matter without prejudice to Castillo's right to seek attorney fees. Castillo's motion for attorney fees has been submitted without oral argument, and will be denied.

## II. BACKGROUND

Castillo's complaint alleges he is a citizen of Mexico who resides in San Rafael, California. In the Spring of 2022, Castillo apparently had interactions with CBP officers at the U.S.-Mexico border in or near Nogales, Arizona, when he was attempting to enter the United

1  States. CBP asserts Castillo was returned to Mexico the same day under Title 42. Castillo contends
2  he had another interaction with CBP within the same general time frame somewhere near San
3  Diego, California.
4      Castillo apparently is investigating the possibility that he may have a tort claim against
5  CBP arising from the incident near San Diego. The complaint alleges Castillo requested expedited
6  processing of his FOIA request because the records were "pertinent to an administrative claim
7  under the Federal Tort Claims Act, for which there is a statute of limitations under 28 U.S.C. §
8  2401(b) that will run in March 2024."
9      Castillo's initial FOIA request, submitted through CBP's automated system on April 7,
10 2023, was assigned FOIA Request Number CBP-FO-2023-067209 ("the '209 Request").
11 Recognizing that the '209 Request was uploaded with unsigned documents, Castillo's counsel
12 submitted a second request on the same day, identical to the first request in all respects but
13 attaching signed documents. CBP's automated system assigned this request FOIA Request
14 Number CBP-FO-2023-067213 ("the '213 Request").
15     Castillo then requested cancellation of the '209 Request through the FOIA portal. CBP
16 implies Castillo's counsel should instead have asked CBP to consolidate or merge the two
17 requests, but it has not shown that its website provided any clear guidance to that effect. In any
18 event, at the time Castillo brought this action, both requests continued to appear in CBP's FOIA
19 tracking database, but they contained no cross-references or notations to alert a FOIA reviewer of
20 their relationship or the existence of the duplicate requests.[1]
21     Moreover, the complaint did not disclose that Castillo had filed two requests, and
22 did not identify the '213 Request by FOIA Request Number at all. Instead, the complaint attached
23 one exhibit listing the request number as "Pending" and a second exhibit expressly referring to the
24 '209 Request—which was based on unsigned documents and which counsel had asked be

---

[1] CBP asserts a "technical issue" prevented the '209 Request from showing as "cancelled" in the system, but asserts that had no effect on the processing of the '213 Request.

CASE NO. 23-cv-03110-RS
2

cancelled.

The two requests remained open in CBP's system and were separately assigned to an initial processor, who reviewed them for a determination of whether expedited processing was warranted, pursuant to DHS policy that such processing is available where "an individual's life or personal safety would be jeopardized by the failure to process a request timely." Because Castillo's requests did not satisfy that standard, his requests for expedited processing were denied on June 15, 2023.

The two requests were then placed into the FOIA queue for records search and further processing, and were both classified as "simple" requests, to be processed on a first-in, first-out basis. CBP asserts that despite the "substantial resources" it devotes to responding to FOIA requests, the volume it receives results in an average processing time for simple requests of six to nine months. As such, Castillo's requests likely would have been processed between October of 2023 and January of 2024—out of compliance with the statutory time frame, but well in advance of the March 2024 deadline Castillo identified as critical.

Castillo filed this action on June 26, 2023, 11 days after the requests allegedly were placed in the queue. CBP contends that based on the complaint, it believed only one request was at issue —the '209 Request. Upon receiving the complaint, CBP changed the status of the '209 Request from "simple" to "complex," pursuant to its general practice of placing all requests that are the subject of litigation in the complex processing track.

The '213 Request remained classified as "simple" because CBP was unaware Castillo intended his complaint to involve it. Because the '209 Request—the request that CBP believed was at issue—did not contain signed documents, CBP could not proceed with processing it. Accordingly, CBP contends, its counsel reached out to Castillo's counsel to explain the situation and to secure signed copies of the documents necessary for release of any responsive documents.. CBP asserts that at the same time it asked where Castillo contended the relevant incident had occurred, "to facilitate an accurate, thorough, and efficient search."

Castillo's counsel then provided the signed documents, which she stated had been

previously uploaded, but she did not explain that she had submitted two FOIA requests for Castillo, acknowledge the complaint referenced the incorrect FOIA request, or clarify that the active FOIA request at issue was the '213 Request. In response to CBP's question about where the alleged incident occurred, Castillo's counsel stated that the records would likely be with CBP "in or near San Diego."

CBP immediately performed an initial search and located one potentially responsive record. The record, however, related to an individual with a slightly different surname and described an encounter with CBP in Nogales, Arizona, not San Diego.

After further investigation CBP located additional records that "clarified the apparent source of the surname misspelling." When Castillo's counsel then confirmed that Castillo had, prior to the San Diego encounter, attempted to enter the United States in or near Nogales, CBP was satisfied that the records, totaling six pages, related to Castillo. CBP released the records, with minimal redactions, on September 15, 2023. Castillo has not challenged the redactions.

The tort claim Castillo believes he may wish to pursue arose from his encounter with CBP in or near San Diego. None of the released records relate to that incident. Castillo contends his FOIA request nonetheless served the useful purpose of confirming that CBP has no records bearing on the events in San Diego.

Arguing that he "substantially prevailed" in this litigation when CBP voluntarily "changed its position" and released the records to him, Castillo now seeks an award of attorney fees in the amount of $30,167.50, and an additional $429.72 in filing and service fees. At the time the motion was filed, Castillo sought a total of $19,470 in fees, of which approximately $9700 (nearly half) represented time incurred in preparing the fee motion. Counsel then billed another $10,697.50 for the reply brief in support of the fee motion.

### III. LEGAL STANDARD

Under FOIA, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the

complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "[A] complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id*. § 552(a)(4)(E)(ii).

Where, as here, a plaintiff seeks fees under the latter prong—an agency's voluntary or unilateral change in position—there is some uncertainty in the law as to whether plaintiff must establish causation by showing the complaint was the "catalyst" for the change. The lead opinion in *First Amendment Coalition v. United States Dep't of Just*., 878 F.3d 1119 (9th Cir. 2017) concluded a 2007 amendment to the statute restored the causation standard under the catalyst theory that had been rejected by an intervening Supreme Court, a conclusion also previously reached by six other circuit courts. *Id.* at 1128. The lead opinion asserted the concurring judge shared the same view.

The third judge, however, concurred only in the judgment, and insisted that given the analysis of the concurrence, there was "in fact no majority for the holding that causation has to be demonstrated" under the 2007 amendment. *Id.* at 1131. Rather, the third judge argued, to be eligible for fees, a plaintiff need only satisfy the three conditions listed in the statute—plaintiff must have (1) "obtained relief," (2) through "a voluntary or unilateral change" in the agency's position, and (3) the claim must be "not insubstantial." *Id.* The third judge insisted any causal nexus requirement was "conspicuously absent" from Congress's definition of a "substantially prevailing" complainant. *Id*

While at least some subsequent district court decisions have applied the causation requirement as outlined in the lead opinion of *First Amendment*, *see, e.g., Kopp v. United States Secret Serv.*, 2019 WL 2327933, at *3 (N.D. Cal. May 31, 2019), it does not appear the issue has been definitively resolved by the Ninth Circuit. If the catalyst/causation requirement does apply, the relevant factors are: "(1) 'when the documents were released,' (2) 'what actually triggered the documents' release,' and (3) 'whether [the plaintiff] was entitled to the documents at an earlier time.' " *First Amendment*, 878 F.3d at 1129 (quoting *Church of Scientology of Cal. v. U.S. Postal*

*Serv.*, 700 F.2d 486, 492 (9th Cir. 1983)).

In any event, finding eligibility does not end the inquiry. "Once a court deems a party eligible to recover fees and costs, it then exercises its 'discretion to determine whether the plaintiff is entitled to fees.'" *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 994 (N.D. Cal. 2012) (quoting *Or. Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009)). The question of whether to award fees to a party who is eligible for them "is left to the sound discretion of the trial court." *Church of Scientology*, 700 F.2d at 492. Factors relevant to that analysis may include, but are not limited to, "(1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law." *Id*.

## IV. DISCUSSION

Regardless of whether there is a causation requirement or not, Castillo has not established he is eligible to recover fees here because nothing suggests he obtained relief through any "change in position" of CBP. Rather, the record shows that the CBP put both his requests in the queue for records search, to be processed on a first-in, first-out basis. CBP never took the position that it did not have to search for records, or that it was entitled to withhold any records (apart from the "minimal" redactions that Castillo has not challenged). CBP never took the position that it would not or could not produce any responsive records in advance of Castillo's claimed deadline of March of 2024.

CBP did, of course, take the position that Castillo's requests were not entitled to "expedited" processing, but then, after the litigation was filed, handled the matter in a manner that may have produced somewhat faster results than if the requests had simply remained in the queue for first-in, first-out processing. Even assuming CBP's post-complaint processing procedure could be characterized as a "change in position" from its prior determination that expedited processing was not warranted, however, Castillo cannot show that his "claim" for expedited processing was substantial. While it is true that agencies have a 20-day deadline to respond to FOIA requests

1 absent extenuating circumstances, where there is no suggestion of avoidable foot-dragging by the
2 agency, and it appears normal processing will result in production within the time period identified
3 by the requester as critical, any claim by the requester of an entitlement to what in effect would be
4 "line jumping" is not "substantial" for purposes of establishing eligibility for fees.[2]  Accordingly,
5 under the circumstances here, Castillo is not eligible for a fee award.

Furthermore, even if Castillo should at least be deemed *eligible* to recover fees, the discretionary factors do not support an award. Castillo's interest in obtaining CBP records relevant to a tort claim he is considering filing does not implicate any significant public interests, and the public cannot be said to have derived any benefit from this case. While holding agencies responsible for responding to FOIA requests on a timely basis is a public concern, this case did not significantly advance that interest. The fact that Castillo was not seeking the records for a commercial benefit weighs somewhat in his favor, but is not dispositive. Castillo's interest in the records, while legitimate, was unlikely critical, as he almost certainly could have filed his tort claim and received the information through that process and/or any subsequent litigation. Finally, the government never withheld the records. While it may have failed to comply strictly with the statutory timing requirements, under the circumstances here that is insufficient to support a fee award.

---

[2] It is also worth noting that while Castillo's efforts to investigate fully before filing his tort claim is laudable, it seems unlikely that he would have so little personal knowledge of what allegedly happened to him that he could not make a timely claim whether or not he obtained any CBP records in advance. Indeed, as it turns out, the CBP produced no records of the incident in question.

IV. CONCLUSION

The motion for an award of fees and costs is denied.

**IT IS SO ORDERED**.

Dated: March 19, 2024

_____
RICHARD SEEBORG
Chief United States District Judge